UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD B. REILING JR.,

  Plaintiff,

  v.

MATRIX WARRANTY SOLUTIONS, INC.,

  Defendant.

Civil Action No.

## COMPLAINT

### (With Jury Demand Endorsed Hereon)

Now comes Plaintiff, **RICHARD B. REILING JR.**, by and through undersigned

counsel, and for his Complaint against Defendant **MATRIX WARRANTY SOLUTIONS,**

**LLC.** states and avers as follows:[1]

### INTRODUCTION

Plaintiff, Richard B. Reiling ("Plaintiff" or "Reiling") brings this complaint against

Defendant Matrix Warranty Solutions, LLC ("Matrix" or "Defendant"), seeking actual, statutory, and

punitive damages for knowing and willful violations of the Telephone Consumer Protection Act, 47

U.S.C. §227, et seq. ("TCPA"), the Massachusetts Telephone Solicitation Act, G.L. c. 159C, et

seq. ("MTSA"), and violations of the Massachusetts Consumer Protection Act, G.L. c. 93A, et seq.

("MCPA").  Specifically, as set forth herein, Plaintiff alleges that Matrix Warranty Solutions, Inc., in

order to attempt to illegally generate auto warranty sales, commissioned and directed and conspired

---

[1] The allegations herein are made upon information and belief, except the allegations pertaining to Plaintiff, his acts
and facts or events within his own personal experience, which are alleged based on his personal knowledge.

to direct automated and pre-recorded telemarketing calls to Plaintiff without his consent in violation

in the TCPA, MTSA and MCPA.

## PARTIES

1.      Plaintiff is, and was at all relevant times, a citizen of Commonwealth of

Massachusetts domiciled at 112 Redington Street, Swampscott, Massachusetts, 01907.

2.      Defendant is a Nevada corporation, with its principal place of business located at

3100 McKinnon Street, Suite 440, Dallas, Texas 75201.

3.      Whenever in this complaint it is alleged that Defendant committed any act or

omission, it is meant that Defendant's officers, directors, agents, servants, or employees,

subsidiaries, or affiliates committed such act or omission and that at the time such act or

omission was committed, it was done with the full authorization, ratification or approval of

Defendant or was done in the routine normal course and scope of employment of Defendant's

officers, directors, agents, servants, or employees.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S. C. § 1331 as this

action involves violations of the TCPA. *Mims v. Arrow Fin. Servs., LLC*., 132 S. Ct. 740 (2012).

This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law causes

of action.

5.      This Court has general jurisdiction over Defendant as Defendant engaged in

nationwide telemarketing efforts and conduct, including in this District.

6.      This Court has personal jurisdiction over Defendant because Defendant conducts

significant business in this District and has continuous and systematic contacts with this District

through its telemarketing efforts, including, among other things, that it directed and caused to be

made automated calls and calls with prerecorded messages that specifically target consumers in this District.   Further wrongful conduct giving rise to the claims asserted herein occurred in and was directed to this District.

7.        Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in and was directed to this district.

## FACTUAL ALLEGATIONS

### A.    Matrix's Operations

8.        At all relevant times, Matrix has claimed to provide extended automotive warranties.  Matrix relies exclusively on telemarketing to sell these warranties, and it maintains a call center for the purpose of telemarketing.  Matrix also utilizes overseas telemarketers (the "Telemarketers") to make these calls on its behalf.

9.        At all relevant times, in order to generate sales of extended warranties,  Matrix repeatedly, harassingly, deceptively and illegally placed thousands of calls to consumers nationwide, including Massachusetts consumers, utilizing caller-id spoofing (a process that displaces the actual caller identification with a fake local caller identification), robocalls, prerecorded messages and calls using automatic telephone dialing systems ("ATDS") and/or utilized the Telemarketers to place such calls. In connection with its telemarketing campaign, Matrix has, at various times, also identified itself as "Element Protection Plans."

10.       At no point has either Matrix or any of its Telemarketers been registered with the Massachusetts Office of Consumer Affairs and Business Regulations (the "Office") as required by 201 C.M.R. § 12.04.

11.       At all times relevant, including but not limited to 2019 and 2020, Matrix, to the extent it utilized Telemarketers instead of or in addition to placing calls directly, authorized the

Telemarketers to solicit business on its behalf through use of telemarketing, and Matrix had control over the Telemarketers' actions on its behalf.  For example:

     a.     Matrix limited the type of consumers the Telemarketers could solicit;

     b.     Matrix restricted the geographical area within which the Telemarketers could solicit business;

     c.     Matrix provided the scripts and sales pitches for the Telemarketers;

     d.     Matrix instructed the Telemarketers with respect to the volume of telemarketing calls and the methods to be utilized; and

     e.     Matrix had day-to-day control over the Telemarketers' actions, including the ability to prohibit the Telemarketers from using an ATDS, illegal spoofing and other illegal methods to contact potential customers.

12.     Although Matrix either knew or should have known of the provisions of the TCPA and MTSA, Matrix, at all relevant times, to the extent it utilized telemarketers, directed its Telemarketers to generate leads by using methods that violate the substantive provisions of the TCPA and MTSA.

13.     Alternatively, Matrix, at all relevant times, to the extent it utilized telemarketers, knew or should have known that its Telemarketers were placing calls to consumers in violation of the TCPA and the MTSA and that its Telemarketers were not registered with the Office; however, Matrix willfully or negligently ignored such conduct and did nothing to stop it.

14.     The calls placed to Plaintiff complained of herein were within the scope of the actual or apparent authority the Defendant provided to the Telemarketers.

15.      At all relevant times, Matrix profited from the Telemarketers' aforementioned efforts and ratified the actions of the Telemarketers by knowingly accepting the benefits of the Telemarketers' illegal activities.

16.      To the extent that Matrix utilizes Telemarketers or other third parties to make telemarketing calls on its behalf, Matrix is ultimately responsible for any violations of the TCPA committed by the calling party, as the Federal Communications Commission ("FCC") has determined in multiple rulings.  *See*, *e.g.*, *In re Rules and Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13 (1995); *In re Joint Petition Filed by DISH Network, LLC, et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574 (May 9, 2013) (even in the absence of a formal contractual relationship between the ultimate seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority " to make the calls). *Id*. at 6586 (¶ 34).

17.      In addition, Matrix is liable, under Massachusetts agency principles, for the acts and violations of the Telemarketers.  *See*, *e.g.*, *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 742-743 (2000) (principal may create agency relationship by giving someone either actual or apparent authority to act on its behalf or by ratifying the other person's actions by accepting the benefits of its misdeeds); *Tilley v. Brodie Mountain Ski Area, Inc.*, 410 Mass. 1009 (1992) (rescript) (principal is liable for any injuries caused by the negligence or other tortious conduct of its agent while acting within the scope of authority delegated to it by the principal); *Savers Prop. & Cas. Ins. Co. v. Admiral Ins. Agency, Inc.*, 16 Mass. App. Ct. 158, 168, *rev. denied*, 442 Mass. 1105 (2004) ("[a] principal may be held liable for the tortious conduct of its agent even where the principal has no knowledge of its agent's" wrongful acts or omissions).

18.     While Matrix's knowledge of TCPA and MTSA violations (and violations of other statutory provisions) by its Telemarketers is not a prerequisite for liability, Matrix clearly had knowledge of such violations for at least the following reasons: a) Matrix has been sued multiple times previously for the same conduct as alleged herein; and b) Matrix has been the subject of and has received numerous consumer complaints through the Better Business Bureau ("BBB") (*see* ¶ 19 below)  and other sources about the same conduct as alleged herein. Accordingly, Matrix, for these reasons and other reasons, clearly had knowledge of unlawful telemarketing calls made on its behalf (to the extent that any or all of such calls were not made directly by Matrix).

19.     As a result of Matrix's illegal telemarketing activities, Matrix has received numerous consumer complaints—at least some of which predate the subject unsolicited calls to Plaintiff—including the following complaints to the BBB:[2]

(a)     **Oct. 13, 2020:** "This company uses autodial robocalling in order to solicit business from calls on the do not call registry I was called on 10/8/2020 at 2:56PM. **My phone number is registered on the national do not call register and I was asked to press 1 to speak to a person**. This indicates usage of an autodialer. I spoke with an operator named Jamie who referred me to Elements website and asked if I was interested in the Ultimate care package. This shows that they were soliciting me for business and not an authorized violation of the do not call registry." (emphasis added)

(b)     **Sept. 8, 2020: "**Company is affiliated with Fulfillment Centers generating leads from spoofed RoboCalls. I have been contacted several times per day almost every day. Several requests have been made to remove me from the call list. Rude People calling me. I have been cursed, threatened, and told to **** Off when I complain about the numerous calls. The company agent I spoke with told me these calls were coming from Fulfillment centers and not from them. I went along with one of the sales pitches, they told me that my powertrain warranty had expired and I needed an extended warranty. This was on a 2019 Dodge Durango with 40,000

---

[2] The complaints reprinted below constitute just a small sample of the consumer complaints against Matrix available on the Better Business Bureau website.  *See* https://www.bbb.org/us/tx/dallas/profile/auto-warranty-plans/matrix-warranty-solutions-inc-0875-90910161 (last accessed February 5, 2021).

miles. The factory warranty goes to 60,000 miles on this vehicle. This company or their affiliates are misleading people and selling them a very expensive product based on a lie. I am not that stupid, but I am very annoyed about the A+ rating. It makes your organization appear as untrustworthy as Matrix. Please take another look at this and all of the other complaints these people receive."

(c)      **June 28, 2020:** "The sales call centers representing this company continue to call my personal cell phone every week despite my asking them to remove my number. I receive one to two phone calls per week on my cell phone from the sales call centers associated with this company. I have asked numerous times to have my phone removed from their call list yet they continue to call. Each time they call it is from a DIFFERENT phone number that uses the same area code as my phone number so it is very difficult to screen these calls. I have spoken directly with the call centers on several occasions. They claim to represent Matrix Warranty Solutions Inc and when I ask to remove my phone number they tell me they will do so and then hang up on me. I have even stayed on the phone long enough to be connected to the 'Activation Department' and asked to have my phone number removed with the same results (they tell me they will remove it and then hang up on me). Finally, I called Matrix Warranty Solutions directly and asked to be removed from their call list and was told they would remove my number from all call centers. However I am still getting phone calls weeks later." (upper case emphasis in original)

(d)      **June 25, 2020:** "Frequent calls offering 'warranty' service on my car. Frequent 'spoofed' calls from numbers in the same area code as my cell phone. Since I've moved from that area, I don't get calls from there and usually ignore and block the number (14 blocked numbers to date). However, the call frequency has increased so I waited for someone to take the call and then asked them to place on the Do Not Call list. However, the calls keep coming. Subsequently, I have now taken the call provided minimal information necessary to get to the next level of sales pitch. At that point, I have asked to be placed on the Do Not Call list. I was promptly hung up on and apparently not placed on the list since I've been called repeatedly since then. Today, I followed through with listening to the same sales pitch and finally asked who the 'warranty' was through. 'James' told me it was 'Matrix Warranty Solutions' and told me to check it out online and noted that they have been in business for 17 years and have a great BBB rating. I then asked him to stop calling me and he disconnected without even saying good-bye (and we were having such an interesting conversation). I've viewed the other BBB complaints of a similar nature and it seems Matrix frequently states that they don't do outbound calls and take every step possible to absolve themselves of responsibility for this harassment and waste of time. My phone number has been on the national DNC registry since I obtained this line and I update it yearly. I should have never received a call in the first place. Perhaps Matrix should not engage with unscrupulous vendors who are willing to violate the TCPA and/or other applicable privacy regulations. Simply stating that you don't make the calls is truthful,[3] but ignores that Matrix remunerates the caller in some fashion and complacency is tantamount to permission. Based on the prior BBB complaints listed here - Matrix has knowledge these calls are happening and has turned a blind eye."

---

[3] Plaintiff does not concede, and in fact alleges that Matrix made calls directly, in addition to or in lieu of contracting with Telemarketers to make calls on its behalf.

(e)    **June 18, 2020**: "I am on the do not call registry and they continue calling using spoofed phone numbers to sell their car warranties I will also be filing a complaint with the do not call registry."

(f)    **June 16, 2020:**  "Illegal unsolicited calls. I have received robo calls over and over from this company. My phone# is on the DNC, is a cell phone, and belongs to a business. That is 3 violations per call on the TCPA. I have asked to be removed from the list multiple times, and they continue to call. This is the final attempt to resolve this issue before I take legal action."

(g)    **April 28, 2020: "** Robocalls 3+ times per day about expired warranty. Have pressed 2 to opt out multiple times. For last year received robocalls incessantly. When I ask the company name the person transfers me to a Sales person who when asked company name says Matrix. When I ask more questions they hang up on me. I press '2' to no longer receive calls yet they keep calling. I have blocked 30+ phone numbers and still get their calls."

(h)    **March 26, 2020:** "Matrix Warranty Solutions (aka Element Protection Plans) uses RoboCalling telemarketers to contact consumers and they have repeatedly called my phone RoboCalling Marketers working for Matrix have called my phone in violation of TCPA & TSR No-Call-List laws."

(i)    **Jan. 8, 2020:** "Multiple illegal unwanted robocalls to my cellphone. I contacted this company recently regarding multiple illegal robocalls to my cell phone made with an automated telephone system using spoofed (fake) caller IDs. My cell phone has been on the national Do Not Call list since 2006. I would like to hear from this company to determine why these unwanted calls were made to my cell phone. I would like for this company to explain why these unwanted illegal calls were made to my cell phone and I would like to receive this company's Do Not Call policy. If Matrix Warranty claims that the robocalls were made by a hired 'seller/marketing agent(s)' I want Matrix to provide the company name including contact person, address, phone number and website of the 'seller/marketing agent(s).'"

(j)    **Dec. 21, 2019:** "I am on the Federal Do Not Call registry and have received multiple calls from them or someone they hired to violate the TCPA (Telephone Consumer Protection Act) for them. They need to stop calling me and have someone from the legal department contact me. I have recorded calls of them calling and taking me to their website and showing me the warranty policy they were trying to sell me. In the calls they take me to Matrix Warranty Solutions website and Element Protection Plans website. They are also spoofing the phone numbers which is another violation of Federal guidelines. It is absolutely them and my recorded calls will prove it. I need to speak with someone in the legal department or one of the owners of the company about getting my number off their list or whoever they have hired to make the calls for them list. I see them denying calling anyone in all their responses and it does not matter if you hire someone to do it for you, you are still responsible for contacting people on the do not call list."

   **B.    Illegal and Harassing Calls to Plaintiff**

20.     Plaintiff's number (617) 913-1325 ("Cell Phone") is registered to a cellular

telephone service.

21.     Plaintiff's family and friends associate Plaintiff with his Cell Phone and use this

number to contact Plaintiff on daily basis.

22.     Matrix and/or its agent Telemarketers placed at least four (4) unsolicited calls[4]

(the "Unsolicited Calls") to Plaintiff's Cell Phone using ATDS, spoofed numbers and

prerecorded voice messages on the following dates and times:

| DATE | TIME | NUMBER APPEARING ON CALLER ID |
|---|---|---|
| 12/10/2019 | 1:16 PM | (617) 913-2574 |
| 01/10/2020 | 11:14 AM | (617) 913-2723 |
| 05/27/2020 | 7:34 PM | (617) 913-8286 |
| 06/04/2020 | 11:35 AM | (617) 913-2631 |

23.     The Unsolicited Calls were made without Plaintiff's express consent or

permission, much less without his express written consent, and they caused Plaintiff great

annoyance and aggravation.

24.     Plaintiff had no previous business relationship and/or dealings with Matrix of any

kind.

25.     The messages left on Plaintiff's Cell Phone included the following:

"Please wait, please don't make the mistake of driving without a warranty.  You are still eligible
to reactivate warranty coverage.  This is the final call before we close the file.  Press 1 to speak
with a representative now about your vehicle." (12/10/2019 Call)

"Please don't make the mistake of driving without a warranty. You are still eligible to reactivate
warranty coverage.  This is the final call before we close the file.  Press 1 to speak with a
representative now about your vehicle."  (01/10/2020 Call)

---

[4] Plaintiff believes that there were actually far more Unsolicited Calls placed to Plaintiff's mobile
phone number than those listed here.  Plaintiff will seek to determine the exact number of calls
through discovery.

"Warranties are time sensitive, they must be extended before your vehicle reaches a certain mileage.   Don't make the costly mistake in driving your vehicle without it.  Press 1 now to speak to a warranty specialist and ask about our zero percent financing.  Press 3 to close your warranty coverage and stop these courtesy calls." (05/27/2020 Call)

26.    After receiving the aforementioned Unsolicited Call on June 4, 2020, in order to get these harassing calls to stop, Plaintiff pressed "1" and was immediately connected with Matrix.  Thereafter Matrix attempted to sell Plaintiff an extended, and in Plaintiff's view quite worthless, warranty policy for Plaintiff's vehicles.  The fact that the connection to Matrix was literally immediate upon Plaintiff pressing "1" during this call is evidence that the call was placed directly by Matrix, instead of by one of its Telemarketers.

27.    Based on Plaintiff's experience and the complaints from other consumers about similar Unsolicited Calls,[5] it is apparent that representatives of Matrix typically only speak to the recipients of Unsolicited Calls who press "1" to speak with a representative.  This is evidence of the use of a predictive dialer, which has been determined to be an ATDS.

28.    In addition, the fact that each Unsolicited Call came from a different phone number (each with Plaintiff's area code and exchange) is further evidence of the use of an ATDS.

29.    Since the Unsolicited Calls were made using neighborhood spoofing (*i.e.*, making the calls appear as if they are coming from numbers with the same area code and exchange as Plaintiff's cell phone), Plaintiff was deceived into believing that he was receiving calls from or concerning family members, health care providers, friends and personal contacts, causing him to listen to the prerecorded messages.

---

[5] *See* ¶ 19, *infra*.

30.     As a direct and proximate result of Defendant's aforementioned illegal telemarketing activities, Plaintiff has suffered actual harm, including but not limited to, invasion of privacy, loss of concentration, loss of productivity, annoyance, aggravation, diminished value and utility of his cell phone and subscription services, wear and tear to his cell phone, the loss of battery charge and battery life, and per-kilowatt electricity cost required to recharge his cellular telephone as a result of increased usage of his cell phone.

31.     In addition to the foregoing, as a direct and proximate result of Defendant's aforementioned illegal telemarketing activities, Plaintiff was forced to identify those responsible to try and get the illegal activities to cease, and in the process of doing so incurred expense in time, materials, and use of equipment.

### C.     M.G.L. c. 93A demand

32.     On November 24, 2020, Plaintiff sent Matrix a demand letter pursuant to M.G.L. c. 93A, § 9(3) (the "Demand Letter") by priority U.S. mail, demanding Matrix's do-not-call policy and the name of the agents operating on Matrix's behalf, if any, and demanding that the harassing calls immediately stop.  The Demand Letter also demanded actual and statutory damages.

33.     Despite Plaintiff's Demand Letter making a specific request for Matrix's do-not-call policy, Matrix did not provide the requested policy, as required by the TCPA, and, although Matrix acknowledged the Demand Letter by email, failed to respond to the Demand Letter with a reasonable offer of relief.

<u>**COUNT I**</u>
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A))**

34.     The allegations in the preceding paragraphs of this Complaint are realleged and incorporated by reference.

35.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

36.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

37.     The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

38.     According to findings of the Federal Communication Commission ("FCC"), the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

39.     The FCC requires prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. In *the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (2012).

40.     The FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

41.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013) ("May 2013 FCC Ruling").

42.     Matrix was legally responsible for ensuring that the Telemarketers complied with the TCPA even if Matrix did not make the calls itself.

43.     Matrix, by and through its Telemarketers, violated 47 U.S.C. §227(b)(1)(A)(iii) by placing not less than four (4) telemarketing calls to Plaintiff's Cell Phone using an ATDS, prerecorded messages and spoofed numbers without Plaintiff's prior express written consent.

44.     Pursuant to 47 U.S.C. § 227(b)(3)(B), Matrix is liable to Plaintiff for a minimum of $500 per violation, which includes multiple violations for each call.

45.     Pursuant to 47 U.S.C. § 227(b)(3)(C), willful or knowing violations of the TCPA trigger treble damages.

46.     The conduct in violation of 47 U.S.C. §227(b)(1)(A)(iii) was willful and knowing.

47.     Plaintiff is entitled to have his damages trebled for the aforesaid willful and knowing violations of the TCPA.

## COUNT II
### (Violations of the Telephone Consumer Protection Act, §227(c)(1) to (4))

48.     The allegations in the preceding paragraphs of this Complaint are realleged and incorporated by reference.

49.     A private right of action exists pursuant to 47 U.S.C. § 227(c)(5) for violations of the regulations promulgated pursuant to the TCPA for the protection of telephone subscriber privacy rights.

50.     47 C.F.R. § 64.1200(c) and (d) set forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call.

51.     Matrix did directly, and through its Telemarketers, violate 47 C.F.R. § 64.1200 *et seq.* in at least the following respects:

a.      By failing to ensure that Matrix and the Telemarketers maintained a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

b.      By failing to provide Plaintiff, upon his demand, Matrix's and the Telemarketers' do-not-call policy, in violation of 47 C.F.R. § 64.1200(d)(1);

c.      By failing to ensure that its personnel and the personnel of the Telemarketers were informed and trained in the existence and use of the do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);

d.      By failing to provide to Plaintiff the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted, in violation of 47 C.F.R. § 64.1200(d)(4); and

e.      By engaging in and causing a pattern or practice of initiating telephone solicitations to Plaintiff's Cell Phone without Plaintiff's express written consent on at least four (4) occasions in violation of 47 U.S.C. § 64.1200(c)(2).

52.     Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, Matrix is liable to Plaintiff for a minimum of $500 for each violation of the TCPA, which includes multiple violations for each call.

53.     Matrix's aforesaid conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, was willful and knowing.

54.     Plaintiff is entitled to have his single damages trebled for these willful and knowing violations.

<u>COUNT III</u>
**Violations of the Massachusetts Telemarketing Solicitation Act, G.L. c. 159C**

55.     The allegations in the preceding paragraphs of this Complaint are realleged and incorporated by reference.

56.     The MTSA and the regulations promulgated under the authority of the MTSA impose strict pre-conditions, limitations and restrictions on unsolicited telephonic sales calls made to Massachusetts residents, and any such calls not in compliance with any of these pre-conditions, limitations and restrictions are prohibited.

57.     Telephone solicitors engaging in unsolicited telephone sales calls to Massachusetts consumers are required to "properly register on an annual basis" with the Office. 201 C.M.R. §12.04.

58.     At all times relevant, neither Matrix nor the Telemarketers were registered with the Office, as required by 201 C.M.R. §12.04.

59.     By failing to comply with the registration requirement, Matrix and its Telemarketers failed satisfy a basic, threshold requirement for conducting telephone solicitations in Massachusetts and, thus violated the MTSA.

60.     Matrix directly and through its Telemarketers, likewise violated the MTSA in connection with the calls complained of herein in at least the following respects:

a.      By making unsolicited sales calls to Plaintiff without prior express consent or permission in violation of M.G.L. c. 159C, § 1;

b.      By making calls to Plaintiff without proper disclosure concerning the identity of the telemarketers and the ultimate seller in violation of M.G.L. c. 159C, § 5A and 201 C.M.R. §12.02(7); and

c.      By using falsified and displaced caller identification in connection with the

Unsolicited Calls to Plaintiff in order to circumvent the use of caller identification services or

devices in violation of M.G.L. c. 159C, §4 and 201 C.M.R., §12.02(5).

61.     The MTSA provides that "[a] person that receives more than 1 unsolicited

telephonic sales call within a 12-month period by or on behalf of the same person or entity in

violation of [c. 159C] may … bring an action to recover for actual monetary loss from such

knowing violation or to receive not more than $5,000 in damages for such knowing violation,

whichever is greater …"

62.     Accordingly, Plaintiff is entitled to statutory damages of $5,000 for each MTSA

violation alleged herein, or actual damages, whichever results in a greater recovery.

## COUNT IV
### Violations of the Massachusetts Consumer Protection Act, G.L. c. 93A
### And Request for Injunctive Relief

63.     The allegations in the preceding paragraphs of this Complaint are realleged and

incorporated by reference.

64.     At all times relevant, Defendant was engaged in trade or commerce within the

meaning of M.G.L. c. 93A §2.

65.     940 C.M.R. §3.16(4) provides that an act or practice violates M.G.L. c. 93A, §2

"if it violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or

other federal consumer protection statutes within the purview of M.G.L. c. 93A, s. 2".

66.     The TCPA was promulgated for the protection of consumers.

67.     940 C.M.R. §3.16(3) provides that an act or practice violates M.G.L. c. 93A, §2

"if it fails to comply with existing statutes, rules, regulations, or laws, meant for the protection of

the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection."

68.   The MTSA was promulgated by the Commonwealth for the protection of Massachusetts consumers, including Plaintiff.

69.   Matrix's and the Telemarketers' numerous violations of the TCPA and MTSA (and the regulations promulgated thereunder) constitute unfair and deceptive conduct in violation of M.G.L. c. 93A, §2.

70.   Matrix engaged in unfair and deceptive conduct by knowingly and willfully contracting with the Telemarketers, who Matrix either knew or should have known utilized illegal practices and methods, in order to attempt to solicit Massachusetts consumers in violation of the TCPA and MTSA and/or by utilizing such illegal practices and methods itself in making telemarketing calls to Plaintiff.

71.   Matrix knew or should have known of the requirements and prohibitions of the TCPA and MTSA (and their underlying regulations).  Accordingly, Matrix's violations of M.G.L. c. 93A, §2 were willful and knowing.

72.   Matrix and its Telemarketers further engaged in unfair and deceptive conduct by repeatedly violating Plaintiff's right to privacy.

73.   As a direct and proximate result of the aforementioned violations of M.G.L. c. 93A Plaintiff has suffered the harm set forth in paragraphs thirty (30) and thirty-one (31) above and other like and serious harm in an amount to be established at trial.

74.   As stated in Paragraph thirty-two (32) above, Plaintiff sent Matrix the Demand Letter, to which Matrix failed to timely respond with a reasonable offer of relief.

75.     As of the filing of this Complaint, Defendant's unlawful conduct in violation of

the TCPA, MTSA and Chapter 93A is continuing.  Said conduct, including the unsolicited,

harassing and unlawful calls, as alleged herein, will continue, and will inflict further damage on

Plaintiff and other consumers, unless and until this Court, or another court of competent

jurisdiction, issues an order directing Defendant to cease and desist from said conduct.

76.     Accordingly, while monetary damages may be sufficient to compensate Plaintiff

for past violations, injunctive relief is necessary in order to stop Defendant's unlawful course of

conduct from continuing.

**WHEREFORE**, as to all Counts, the Plaintiff requests that this Court:

1.     Enter judgment for Plaintiff and against Defendant;

2.     Award Plaintiff his actual, compensatory, statutory, punitive and multiple

damages to be determined at trial;

3.     Find Defendant to be vicariously liable for the acts and omissions of its

Telemarketers complained of herein;

4.     Find that Defendant and its Telemarketers violated the TCPA, and award Plaintiff

statutory damages of not less than $500 for each violation;

5.     Find that Defendant's violations of the TCPA were wilfull, and award Plaintiff

statutory damages of not less than $1,500 for each violation;

6.     Find that Defendant and its Telemarketers violated the MTSA, and award Plaintiff

statutory damages of not less than $5,000.00 for each violation;

7.     Find that Defendant and its Telemarketers' actions complained of herein were

willful, knowing, intentional, unfair, and deceptive, in violation of M.G.L. c. 93A and award

Plaintiff actual, statutory and/or multiple damages;

8.    Award Plaintiff his reasonable costs, expert fees, attorney fees and expenses;

9.    Issue a permanent injunction, enjoining Defendant from additional and continuing violations of the TCPA, MTSA, and Chapter 93A; and

Award Plaintiff pre-judgment interest and such other and further relief as Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE.**

Dated: March 3, 2021                    Respectfully submitted,


                                        /s/ David Pastor
                                        David Pastor (BBO# 391000)
                                        **PASTOR LAW OFFICE, LLP**
                                        63 Atlantic Avenue, 3d Floor
                                        Boston, MA 02110
                                        Telephone: (617) 742-9700
                                        Facsimile: (617) 742-9701
                                        Email: dpastor@pastorlawoffice.com


                                        *Plaintiff's Counsel*